[Civ. No. 69546. Second Dist., Div. Six. Apr. 16, 1984.]

W. PATRICK RIGGS, Plaintiff and Appellant, v.
CITY OF OXNARD, Defendant and Respondent.

## COUNSEL

Donald J. Parrish for Plaintiff and Appellant.

K. D. Lyders, City Attorney, for Defendant and Respondent.

## OPINION

**STONE, P. J.**—Appellant, W. Patrick Riggs, owner of an Aamco transmission business, appeals from a denial of a writ of mandate. The petition for a writ sought to require respondent, City of Oxnard, to issue a criminal citation and to order a civil injunction against Ben and Sherry Zolfaghari, owners of Oxnard Transmission, because their business operation was in violation of an existing City of Oxnard zoning ordinance. We uphold the trial court's denial of the writ, and affirm the judgment.

### FACTS

In June 1982 Ben and Sherry Zolfaghari (hereinafter referred to as Zolfaghari) began their Oxnard Transmission business after respondent, City of Oxnard, erroneously approved the zone clearance. The Zolfagharis quit their prior jobs and spent substantial sums of money (over $37,000) to commence their new business.

Oxnard Transmission is located in a C-2 zone. Ordinance No. 1706, section 34-79 of the Code of the City of Oxnard, sets forth uses of land permitted in the C-2 zone. Section 34-79.1 of that code specifically *excluded* transmission installation in a C-2 zone.

The violation was brought to the attention of the respondent in the form of a complaint by appellant, W. Patrick Riggs, whose Aamco Transmission business was across the street from Zolfaghari. Appellant, whose business was also in a C-2 zone, had sought and was granted a five-year variance in 1968. The respondent failed to review that variance as required, and in 1982 stated that the variance was legally questionable in 1968 and was now clearly improper pursuant to California Government Code section 65906.[1] In 1980 appellant sought to expand or relocate to other C-2 property. Appellant was informed by respondent that he could not expand in the C-2 zone and that the use of C-2 property excluded a transmission installation business. On January 3, 1983, appellant relocated his business outside the city limits.

The respondent acted to defer prosecution of Zolfaghari to enforce zoning compliance, when as a result of its mistake respondent was threatened with litigation by Zolfaghari. In June 1982 respondent entered into an agreement with Zolfaghari to defer possible prosecution pending a review by city council and the planning commission of a suggested amendment to section 34-79.1 of the Municipal Code, approving transmission installation as a related use in a C-2 zone. Respondent and Zolfaghari further agreed that if the zone change was approved, Zolfaghari would file for the required special use permit. If the zone change was not approved, Zolfaghari agreed to relocate on or about April 1987, at which time they agreed they would have recovered their investment.

On November 10, 1982, appellant filed a petition for a writ of mandamus (Code Civ. Proc., § 1085) seeking an alternative writ of mandamus commanding the respondent to discontinue Zolfaghari's business and a peremptory writ requiring respondent to enjoin Zolfaghari from continued business and to issue a criminal citation. On January 24, 1983, appellant filed another alternative writ of mandate. (Code Civ. Proc., § 1087.) The matter was heard on February 11, 1983, and the court denied appellant's writs. The instant appeal ensued.

## ANALYSIS

On August 2, 1983, the City Council of Oxnard adopted ordinance No. 1979, amending section 34-79.1 of the Municipal Code, deleting the prohibition against "transmission and radiator installation" and authorizing "transmission and radiator repair" as a related use in a C-2 zone, subject to a special use permit. Zolfaghari had only to apply for a special use permit

---

[1]California Government Code section 65906 provides in pertinent part that "a variance shall not be granted for a parcel of property which authorizes a use or activity which is not otherwise expressly authorized by the zone regulation governing the parcel of property. The provisions of this section shall not apply to conditional use permits."

to legally operate within the C-2 zone. The enforcement of the zoning ordinance appellant seeks is therefore no longer at issue and the case is moot.

■ However, this court will address appellant's argument that a writ of mandamus will lie when an individual taxpayer or property owner seeks to enforce a clear public duty. (*Hollman* v. *Warren* (1948) 32 Cal.2d 351 [196 P.2d 562]; *Bd. of Soc. Welfare Authority* v. *County of L. A.* (1945) 27 Cal.2d 98 [162 Cal.Rptr. 627].) In the instant case respondent did enforce the zoning ordinance and the means to enforcing that ordinance was within the discretionary power of the respondent. ■ A writ of mandate will not issue to compel that discretion be exercised in a particular way. (*Faulkner* v. *Cal. Toll Bridge Authority* (1953) 40 Cal.2d 317 [253 P.2d 659]; *Lindell Co.* v. *Board of Permit Appeals* (1943) 23 Cal.2d 303 [144 P.2d 4].) ■ Further, it is not the function of the court to challenge the municipality's policy and wisdom. "The function of the courts is to determine whether or not the municipal bodies acted within the limits of their power and discretion." (*Wheeler* v. *Gregg* (1949) 90 Cal.App.2d 348, 361 [203 P.2d 37].)

■ The appellant urges that a zoning violation imposes a duty upon the respondent to issue a criminal citation and enjoin the continued use of the property. This court has, however, determined that the respondent *had* the discretionary power to seek the alternative remedies of an amendment to the ordinance, or a termination of the land use by Zolfaghari within a reasonable time.

The source of this discretionary power is three fold: 1) the plain meaning of the statute establishes that the city may use discretion in enforcement, 2) the police power that gives the municipality authority to establish zoning ordinances in the first place also allows the municipality to change that zoning, and 3) where the city may be estopped from enforcement of a zoning ordinance, or faces an action for damages, it is *required* to exercise discretion.

Ordinance No. 1506 of the City of Oxnard states that a violation of a license or permit condition granted pursuant to chapter 34 (zoning) "may be prosecuted as a violation of the Code of the City of Oxnard pursuant to Section 1-10." The language of the statute is clear in that it does not require prosecution for a violation, but uses the word "may," thereby allowing the city discretion to make such a determination. The respondent city is not, therefore, mandated to issue a criminal citation for a zoning violation, but may logically resolve a violation in other ways, as it did in this case.

■ Zoning is a function of the police power of the state. ■ Zoning does not mean permanent regulation. "Extensions, curtailments and modi-

fication are all a part of comprehensive zoning." (*Smith* v. *Collison* (1931) 119 Cal.App. 180, 185 [6 P.2d 277].) The determination to amend a zoning ordinance has been recognized as a legitimate exercise of the police power, for a zoning ordinance may be amended from time to time as new and changing conditions warrant revision. (*Jardine* v. *City of Pasadena* (1926) 199 Cal. 64, 76 [248 P. 225, 48 A.L.R. 509].) ■ When respondent recognized that Zolfaghari had relied upon the city's zoning clearance and would suffer considerable injury if required to vacate, and that respondent also faced litigation in an action by Zolfaghari, it reasonably sought to amend the ordinance. Such action was within respondent's power and the new and changed circumstances triggered the appropriate use of the police power. ■ "Property is always held subject to the valid exercise of police power." (*Wheeler* v. *Gregg, supra,* 90 Cal.App.2d 348, 365.) ■ Property as zoned is neither a vested right (*ibid.*) nor does it represent a contract divesting the city of the right to subsequently change the ordinance. (*Acker* v. *Baldwin* (1941) 18 Cal.2d 341, 345 [115 P.2d 455].)

■ Finally, the respondent is *required* to exercise discretion when he is faced with litigation that may result in estoppel of enforcement of the ordinance, or a suit for damages. In *Anderson* v. *City of La Mesa* (1981) 118 Cal.App.3d 657 [173 Cal.Rptr. 572], the appellant city had denied the respondent an occupancy permit for a home the respondent had constructed in conformity with a building permit issued by the city. The city had inspected the home six times during construction. After completion, the city maintained the house had to be set back at least ten feet from the lot lines, not the five feet required on the permit. The court held that there was a proper application of estoppel against the city, since the property owner would face substantial harm without an appropriate remedy. The trial court found, and the appellate court confirmed, that the city had abused its discretion by denying a variance. The principles of estoppel and the subsequent requirement that the appellant city use discretion to protect the respondent, who relied on appellant, from substantial harm are in force in the case at bar. The respondent must act within its power to offer a remedy to Zolfaghari.

Respondent has not acted in an arbitrary, capricious or unreasonable manner and therefore has not abused its discretion. (*City of Los Angeles* v. *Gage* (1954) 127 Cal.App.2d 442, 453 [274 P.2d 34]; *Wheeler* v. *Gregg, supra,* 90 Cal.App.2d 348, 368.) On the contrary, respondent sought to amend the zoning ordinance to allow a use of the land which was apparently reasonable since appellant had been operating a transmission shop in a C-2 zone across the street from Zolfaghari since 1968 (subject to a variance). If appellant had decided to remain on that C-2 property rather than move away, he could also have sought a special use permit.

The appellant has cited the case of *City of Stockton* v. *Frisbie and Latta* (1928) 93 Cal.App. 277, 289 [270 P. 270] to substantiate his position that a civil injunction may be sought when a statute has been violated. But *Frisbie* holds a considerably more expansive position in that ". . . it is left for such corporation or town or county to determine for itself the particular mode for enforcing such regulations [ordinances adopted in the exercise of the police power] . . . . Of course, the means of enforcement, whatever the nature thereof, must be reasonable and should be suitable to the nature of the ordinance or the effect of the violation thereof upon the personal and the property rights of the inhabitants of such city or town." (*Id.*, at p. 289-290.) It was clearly a reasonable position for the respondent to attempt to avoid litigation at taxpayers expense by amending a zoning ordinance in such a way as to have little or no impact on the city as a whole. The use of the land for a transmission shop has never been alleged to be unreasonable. The respondent was, in fact, mandated to seek alternative remedies which it did within its discretionary power.

The judgment is affirmed.

Abbe, J., and Gilbert, J., concurred.