[Civ. No. 26839. Second Dist., Div. One. July 8, 1963.]

EVA J. CASE et al., Plaintiffs and Appellants, v. THE CITY OF LOS ANGELES et al., Defendants and Respondents.

Phill Silver for Plaintiffs and Appellants.

Roger Arnebergh, City Attorney, Bourke Jones, Claude E. Hilker, Assistant City Attorneys, Richard M. Crane, Fendler, Gershon & Warner, Harold A. Fendler and Harry L. Gershon for Defendants and Respondents.

FOURT, J.—This is an appeal from a judgment which among other things granted defendants' motions for declaratory judgment on the pleadings and declared the validity and constitutionality of an approval of a conditional use by city authorities to the individual respondents herein.

The complaint filed herein on November 6, 1961, was in seven counts and alleged generally that Bentley, Watts and Hunter, sometimes hereinafter referred to as the individual respondents, were the owners of 47 acres of land zoned R1-H located on Cahuenga Boulevard in Los Angeles to the immediate west of the Hollywood Freeway; that ordinance number

90500 of the City of Los Angeles limits the uses within such zone to single family dwellings excepting where conditional uses are granted for certain additional purposes pursuant to the procedure provided in said ordinance; that following the conditional use request procedure the individual respondents applied for permission to construct ''a deluxe apartment house complex group dwelling type of housing project''; that a public hearing was held after which the city zoning administrator conditionally approved the application; that thereafter appellants appealed the decision to the city planning commission and then to the city council, each of which public bodies heard the matter and affirmed the decision of the zoning administrator.

The municipal and individual defendants filed their demurrers to the complaint on November 27, 1961, urging among other things that the complaint did not state facts sufficient to constitute a cause of action and that in many respects the complaint was uncertain.

The demurrer was to have been heard in mid-December 1961, and just prior thereto on December 13, 1961, the plaintiffs filed a first amended complaint. The amended complaint is word for word like the original complaint with the exception that a new seventh cause of action is added in the place of the original seventh cause of action.

The municipal defendants filed a demurrer both general and special to the amended complaint and a motion to strike. It was set forth therein that among other things the amended complaint was uncertain in 17 separate respects. The individual defendants resubmitted their demurrer as previously filed with additional points and authorities in support thereof.

The court overruled the demurrers but without prejudice to the filing by defendants of an appropriate motion for a declaratory judgment on the pleadings. The motion of defendants to strike certain parts of the amended complaint went off calendar.

The defendants in April 1962 filed separate notices of motions for a declaratory judgment upon the pleadings which motions were heard and granted on April 26, 1962, and judgment was filed and entered on May 31, 1962. This appeal followed.

The basic questions are whether the Los Angeles Municipal Code provisions which permit the establishment of a housing project in an R1 zone are constitutional and whether the allegations of the amended complaint with reference to the con-

duct of public hearings were such as to preclude the court from granting respondents' motions for declaratory judgment under the circumstances.

The amended complaint sets forth the pertinent provisions of the Los Angeles Municipal Code, sometimes hereinafter referred to as the code.[1]

The amended complaint further sets forth in effect that among the uses permitted in an R1 zone are housing projects if the zoning administrator "finds that the proposed location will be desirable to the public convenience and welfare and will be in harmony with the various elements and objectives of the master plan." Section 12.03 of the code heretofore set forth in the footnotes defines the term "housing project" as used in the code provisions under discussion.

In plaintiffs' first cause of action they in effect allege that section 12.24C-1.5 (e) of the code (plaintiffs incorrectly referred to (b) which has to do with golf courses) is unconstitutional because it provides for rezoning without an amendment to the master plan by ordinance and that the "ordinance" authorizing a housing project in the R1 zone will depreciate the value of plaintiffs' property and constitute an invasion of their constitutional rights.

---

[1]Los Angeles Municipal Code

12.03 HOUSING PROJECT (Amended by Ord. No. 107, 884, Eff. 9/23/56) —A group of residential buildings, most of which contain more than one dwelling unit, located on a lot having an area of five acres or more and arranged in accordance with a plan of development for the entire project, with provision for adequate open spaces and conveniently located service facilities.

12.08 "R1" ONE-FAMILY ZONE:

The following regulations shall apply in the "R1" One-Family Zone:

A. USE—No building, structure or land shall be used and no building or structure shall be erected, structurally altered, enlarged, or maintained, except for the following uses, and, when a "Supplemental Use District" is created by the provisions of article 3 of the chapter, for such uses as may be permitted therein:

. . . . . . . . . . . .

6. (Amended by Ord. No. 117, 450, Eff. 12/18/60)—Conditional uses enumerated in Section 12.24 when the location is approved pursuant to the provisions of said section.

12.24 CONDITIONAL USE:

A. PURPOSE—The principal objective of the "Comprehensive Zoning Plan" is to provide for the proper location of all types of land use. To accomplish this objective, each type of land use is classified by this plan as being permitted in one or more of the various zones established by this plan. However, it is often necessary to permit certain uses in zones other than those in which they are classified, because of their unusual characteristics or the large area required for their operation. These uses require special consideration as to their proper location in relation to adjacent uses or to the development of the community, and to the various elements of the Master Plan. Because of the various types of

 The acts of the administrative agencies in approving the location of a conditional use is not a rezoning of the property. The agency in this case simply found that the legislatively imposed standards exist and thereby effectuated the legislative permission to construct a housing project in the R1 zone. In *Essick* v. *City of Los Angeles,* 34 Cal.2d 614, 624 [213 P.2d 492], the court said: ". . . it is clear that a resolution performing *the administrative act of granting a conditional use permit,* as authorized by amended subsection C. of Section 12.24, *does not constitute the 'changing of a zoning ordinance'* " (Italics added). Also in *Wheeler* v. *Gregg,* 90 Cal.App.2d 348, 363 [203 P.2d 37], the court stated: "It must therefore be held that *the power granted by section 12.24 of the ordinance* to the planning commission in the first instance, and to the city council on appeal, to grant conditional use permits in the particular instances specified, was not intended to, nor does it confer any power to amend or alter the zoning ordinance itself, nor does it delegate any legislative power. . . . The decision to grant a conditional use permit does not create a new zone. It merely affirms as a fact the existence of the circumstances under which the ordinance by its terms prescribes that such permit shall issue." (Italics added.)

 With reference to the second part of plaintiffs' allegations, the courts in California have many times held in effect that a diminution of property values, if any, resulting from the proper exercise of governmental functions is no basis for invalidating such proper governmental activities. See

---

uses and locations requiring this special consideration, the specific conditions under which each use may be permitted, also must be considered. Such uses, together with the conditions controlling their operation, are designated as "Conditional Uses" and shall be regulated by the following provisions of this section.

12.24B 1 (g) Public utilities and public service uses or structures.

12.24 C-1.5 Additional Authority of Zoning Administrator—A Zoning Administrator shall have the authority to approve the use of a lot in the zones hereafter indicated for any of the following conditional uses, if he finds that the proposed location will be desirable to the public convenience or welfare and will be in harmony with the various elements and objectives of the Master Plan. These conditional uses (which are appealable to the Commission) are:

. . . . . . . .

12.24 C-1.5 (e) Housing projects in the A, RE, RS, R1 and R2 zones.

12.24 C-2 Conditions of Approval—In approving the location of any of the uses enumerated in section 12.24-C, 1, a Zoning Administrator may impose such conditions as he finds are necessary to protect the best interests of the surrounding property or neighborhood, or to lessen or prevent any detrimental effect thereon, or to secure appropriate development in harmony with the objectives of the Master Plan.

*Clemons* v. *City of Los Angeles,* 36 Cal.2d 95, 99 [222 P.2d 439]; *Reynolds* v. *Barrett,* 12 Cal.2d 244, 250 [83 P.2d 29], and *Otis* v. *City of Los Angeles,* 52 Cal.App.2d 605, 614 [126 P.2d 954], where it is said: "The mere fact that damage resulted to plaintiffs' property from the application of the [zoning] ordinance thereto in no way affects the validity of the legislative or administrative board's action. When the exercise of the police power is proper and reasonable, ensuing damage to one's property is one of the prices that the individual must pay as a member of society, to the end that the general welfare of the community may be served."

The identical contention was made in *Wheeler* v. *Gregg,* 90 Cal.App.2d 348 [203 P.2d 37], and there the court at page 365 stated:

"The permit granted respondent Gregg does not restrict appellants in the use of their own property. And they have no vested right in the maintenance of restrictions on respondent Gregg's property. It may be true that to continue the zoning restrictions upon respondent Gregg's property might have conferred benefit on neighboring owners and enhanced the value of their property, but the existence of benefits does not generate interests protected by the Constitution against diminution by governmental authorities in the proper exercise of the police power. Zoning regulations are not contracts by the city and may therefore be modified by the latter. Property is always held subject to the valid exercise of police power. The theory of vested rights relates only to such rights as an owner of property may possess not to have his property rezoned after he has started construction thereon or was making a use thereof permitted by law, when such construction or use does not constitute a nuisance. [Citations.] The adoption of Zoning Ordinance No. 90500 gave appellants no vested rights which would prevent defendant city from subsequently amending the ordinance or granting a conditional use permit thereunder. The provisions of the ordinance restricting the uses to which respondent Gregg's property could be put did not result in a contract with appellants divesting the city of the right to subsequently change the ordinance or to grant a conditional use permit adversely affecting the property of appellants."

In the second cause of action plaintiffs also attack section 12.24C-1.5 of the code as being unconstitutional, as being vague and without adequate criteria to guide in the granting of a conditional use and further that the factors

which constitute a "housing project" are inadequately set forth in the code. In appellants' brief no mention is made of the first assertion other than that which is made in their title with reference to their contention of vagueness and it may be assumed that they have abandoned that particular contention. The appellants themselves allege that ordinance 107884 of the city amended section 12.03 of the code so as to define a "housing project." (See footnote.) There is no mention in the section of any requirement to the effect that a housing project is limited to slum areas or that it must be financed by "federal funds," as is apparently plaintiffs' argument. We think the definition of a housing project as set forth in the code suffices for the purposes of this case.

█ In the third cause of action plaintiffs contend that section 12.24C-1.5 is unconstitutional because it improperly delegates legislative authority, namely that it provides for delegation of legislative power to the zoning administrator when it permits him to ascertain (1) what constitutes a "housing project" and (2) when the proposed use of a lot is "proper in relation to adjacent uses and the development of the community."

It has heretofore been stated that the zoning administrator does not make the determination of what constitutes a housing project. That term is defined in the code. The standard as set forth above in (2) of plaintiffs' contention is not the standard described in the code in section 12.24C-1.5. The authority to determine whether the standards as set forth in the code have been met and therefore whether a conditional use can be approved has been held not to be an improper delegation of legislative authority. See *Wheeler* v. *Gregg*, 90 Cal.App.2d 348, 362 [203 P.2d 37], where it is set forth:

"It is next contended that the power vested in the planning commission in the first instance, and in the city council on appeal, to grant a conditional use permit under section 12.24 of Ordinance No. 90500, constitutes an unlawful delegation of legislative power. This claim is without merit. We are persuaded that a finding by the planning commission in the first instance, or, as in the case at bar, by the city council on appeal, of the necessary facts to justify the granting of a conditional use permit under section 12.24 of the ordinance is an exercise of quasi judicial, or perhaps administrative power, and does not amount to an exercise of legislative power."

■ The fourth cause of action asserts that section 12.03 of the code is unconstitutional as being vague and uncertain. The definition contained therein is plain and clear and we hold that the legislatively imposed standards for ascertaining what constitutes a "housing project" are fitting and proper and are not vague and uncertain.

■ The fifth cause of action asserts that the city officials "acted under a miscomprehension of their duty" in concluding that they had authority to permit a housing project in other than a "slum area" and without federal aid. There is, as heretofore stated, no requirement under the code that a housing project be located in a "slum area" and be aided by federal funds.

■ Plaintiffs further allege in effect that the council in enacting the legislation in question really intended something other than that which they enacted. In *Bertolozzi* v. *Progressive Concrete Co.*, 95 Cal.App.2d 332, 335 [212 P.2d 910], the court said: "Defendants offered to prove by the city attorney who drafted the ordinance that it was not intended to apply to sidewalks. The court properly refused to admit this evidence. . . . Where a statute or ordinance is clear on its face there is no room for extrinsic evidence of its meaning." See also *Caminetti* v. *Pacific Mutual Life Ins. Co.*, 22 Cal.2d 344, 353 [139 P.2d 908]; *Shorb* v. *Barkley*, 108 Cal. App.2d 873, 877 [240 P.2d 337].

In the sixth cause of action appellants assert that they were denied a fair hearing before the various municipal bodies because (1) certain letters were written favoring the applicants "without giving details of their contents to the plaintiffs" and were "improperly considered," (2) such letters were considered without affording plaintiffs an opportunity to examine the writers of said letters or to adduce evidence in rebuttal and (3) "statements contained in the letters were accepted as factual evidence without production of the writers as witnesses." The identical allegations were contained in the original complaint and a special demurrer was interposed wherein it was pointed out that plaintiffs failed to allege wherein the code requires that persons sending letters to an administrative body or that the administrative body receiving such letters must give "details of their contents" to some indefinite class of persons; that plaintiffs failed to allege the content, materiality or manner of consideration of any such letters; that plaintiffs failed to allege that the evidence apart

from the challenged letters was not alone sufficient to support the approval of the conditional use in question; that plaintiffs failed to allege the denial to them of any request by them to introduce evidence, to be heard or to call or cross-examine any witness; and that plaintiffs failed to allege what statements had been "accepted as factual evidence of the matters therein contained." The individual defendants also demurred asserting that the plaintiffs had failed to allege in what manner the questioned letters had been concealed from or were damaging to plaintiffs and had failed to allege what rebuttal evidence they sought to introduce and how the administrative agencies had improperly considered the letters. ■ The allegation that the administrative bodies "improperly" considered the letters is a conclusion. See *City Council* v. *Superior Court*, 179 Cal.App.2d 389 [3 Cal.Rptr. 796]; *Hancock* v. *Burns*, 158 Cal.App.2d 785 [323 P.2d 456]; *Lincoln* v. *Fox*, 168 Cal.App.2d 31 [335 P.2d 161].

In *Desert Turf Club* v. *Board of Supervisors*, 141 Cal.App. 2d 446, 456 [296 P.2d 882], it is held that the fact of whether the writers of letters to an administrative agency are for or against the particular matter under consideration may be considered. For all that appears in this case it may have been that the letters in question simply set forth that the writers were for or against the project. Nowhere is there any assertion that the evidence without the letters was not sufficient in and of itself to warrant the orders which were made. In the case last cited it is further set forth at page 455: "As it appears to us that the board of supervisors based its action on an erroneous conclusion as to its legal rights and duties, and that upon the record legitimately before it the board acted in abuse of its discretion, a writ of mandate should issue. [Citations.]"

Plaintiffs made no allegation of what evidence they desired to offer or how it might have affected the result. See *Tudor* v. *City of Rialto*, 164 Cal.App.2d 807, 811-812, 814 [331 P.2d 122].

■ In the seventh cause of action appellants allege that the conditional use was void because no standards were set forth to guide the administrative bodies in determining the height of the buildings. First of all the appellants have failed to allege properly the portion of the code which they assert is invalid. See section 459, Code of Civil Procedure; *Simpson* v. *City of Los Angeles*, 40 Cal.2d 271 [253 P.2d

464]. In any event, however, section 12.24C-2 of the code provides for height and area requirements in that they must be such as to "secure an appropriate development" in harmony with the master plan. The matter is not left to the unbridled discretion of the zoning administrator.

The procedure of the trial court in overruling the demurrers and thereafter upon motion of the defendants granting declaratory relief on the pleadings was approved in *Essick* v. *City of Los Angeles*, 34 Cal.2d 614, 624-625 [213 P.2d 492], and in *Wilson* v. *Board of Retirement*, 156 Cal.App.2d 195, 201 [319 P.2d 426].

We have carefully considered the entire record in this case and we find no merit to any of the appellants' contentions.

Judgment affirmed.

Wood, P. J., and Lillie, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied September 4, 1963.