[Civ. No. 33790. Second Dist., Div. Five. Feb. 18, 1970.]

THOMAS STODDARD et al., Plaintiffs and Appellants, v.
EDMUND D. EDELMAN et al., Defendants and Respondents;
CALIFORNIA FIRST NATIONAL REALTY & CONSTRUCTION
CORPORATION et al., Real Parties in Interest and Respondents.

546

---

**COUNSEL**

Martin & Flandrick and Robert Flandrick for Plaintiffs and Appellants.

Roger Arnebergh, City Attorney, Bourke Jones and Claude E. Hilker, Assistant City Attorneys, and Jerome Montgomery, Deputy City Attorney, for Defendants and Respondents.

MacFarlane, Schaefer & Haun and Jeremy V. Wisot for Real Parties in Interest and Respondents.

## OPINION

**KAUS, P. J.**—This is an appeal from a superior court judgment denying a writ of mandate (Code Civ. Proc., § 1094.5) by which petitioners sought to obtain a judgment ordering rescission of a zoning resolution adopted by the City Council of Los Angeles. The resolution granted California First National Realty and Construction Corporation (First National) a conditional use permit for the construction and use of a religious synagogue in West Los Angeles. Petitioners are a group of persons owning parcels of real property near the site proposed for the synagogue. Respondents consist of First National, the City of Los Angeles, the 15 members of the city council as that body was constituted when it adopted the subject resolution, and Sephardic Temple Tiferth Israel (the Temple). First National and the Temple are the real parties in interest.

The facts precipitating the controversy are stipulated and can be recounted briefly. Before June 1967, First National contracted to sell certain property to the Temple. A condition precedent to the closing of escrow was the issuance of a conditional use permit allowing construction and use of a religious synagogue on the property. In order to satisfy the condition First National, on June 29, 1967, applied to the city zoning administrator for the permit. After a hearing the administrator, on August 17, denied the application. An appeal was taken to the city board of zoning adjustments. On October 3 the board affirmed the decision of the administrator. First National filed a second appeal on October 11, 1967, this time to the city council. The council referred the matter to its planning committee, which conducted a hearing and advised the council to grant the permit subject to certain conditions which it recommended. On January 3, 1968, the council held its own hearing, at which spokesmen from both points of view were heard. It "granted" the appeal, subject to the recommended conditions. The vote adopting the resolution was 12 to 1.[1]

On March 13, 1968, the Temple acquired title to the property from First National.

On appeal petitioners advance eight reasons why the action of the city council should be set aside. We have found none of them persuasive.

[1] Two councilmen were absent.

I. STANDARDS.

Petitioners argue in the alternative that the standards of the Los Angeles Municipal Code ("LAMC"), governing the issuance of conditional use permits, are either so vague as to constitute an unconstitutional delegation of legislative authority, or should be judicially construed to be more exacting than a literal reading of the zoning ordinance would indicate.

■ With respect to the first prong of petitioners' contention, it is true that a legislature's delegation of unbridled discretion to an administrative agency is invalid, and that to avoid such a result it is necessary that the delegating statute establish an ascertainable standard to guide the administrative body. (*State Board of Dry Cleaners* v. *Thrift-D-Lux Cleaners, Inc.* (1953) 40 Cal.2d 436, 448 [254 P.2d 29]; *Kugler* v. *Yocum* (1968) 69 Cal.2d 371, 375-377 [71 Cal.Rptr. 687, 445 P.2d 303].) ■ We recognize also that the doctrine applies where the legislative body of a city attempts to delegate its law-making functions. (*Kugler* v. *Yocum, supra,* 69 Cal.2d 371, 375; cf. *City of Redwood City* v. *Moore* (1965) 231 Cal.App. 2d 563, 576 [42 Cal.Rptr. 72].) ■ Furthermore, as a matter of state statutory law, the zoning administrator and board of zoning adjustment can issue conditional use permits only if the local zoning ordinance has established "criteria for determining such matters." (Gov. Code, § 65901.) But standards for issuing conditional use permits which, under the ordinances of California cities, vary from general to specific, have almost uniformly been judicially approved. (California Zoning Practice, §§ 7.67-7.71, pp. 302-307, (Cont.Ed.Bar 1969).) ■ The standard set by the Los Angeles Municipal Code is a "general welfare standard." (*Id.,* § 7.70, pp. 305-306.) The code provides that the zoning administrator may issue a conditional use permit ". . . if he finds that the proposed location will be desirable to the public convenience or welfare and will be in harmony with the various elements and objectives of the Master Plan." (LAMC § 12.24-C.1.5.) At least two courts have squarely held that this ordinance is not too vague to be valid. (*Case* v. *City of Los Angeles* (1963) 218 Cal.App.2d 36, 42 [32 Cal. Rptr. 271]; *Wheeler* v. *Gregg* (1949) 90 Cal.App.2d 348, 362-363 [203 P.2d 37].) The Supreme Court sustained an even broader standard in a case involving San Francisco's building permit ordinance. (*City & County of San Francisco* v. *Superior Court* (1959) 53 Cal.2d 236, 249-250 [1 Cal.Rptr. 158, 347 P.2d 294].)[2] Against this background it is clear that petitioners'

---

[2]We have found only two cases striking down ordinances as invalid attempts to delegate legislative authority. In *People* v. *Perez* (1963) 214 Cal.App.2d Supp. 881, 885-886 [29 Cal.Rptr. 781], a criminal prosecution for the erection of a sign, the court was troubled primarily by the fact that the "accessory uses" of property zoned for the single principal use of agriculture were reasonably incidental only to "conditional uses." Therefore, while, nominally, an owner of such property could, as a matter of right, use it for any purpose listed as an "accessory use," in reality he could

argument must fail. Since we hold that the criteria for determining an application for a conditional use permit are constitutionally adequate, it is unnecessary to consider the additional standards—and thus the further required findings—proposed by petitioners for the purpose of "saving" the ordinance from the opprobrium of unconstitutionality. The only ultimate finding which the ordinance required the city council to make, therefore, is that the proposed use of the subject property satisfy the standards established by Los Angeles Municipal Code section 12.24-C.1.5.

## II. FINDINGS.

Petitioners claim that the findings contained in the city council's resolution were inadequate to support the issuance of the conditional use permit.

There is some authority for holding that no particularized findings are necessary at all, since the court will imply from the council's action that it found the requisite facts to support its action. (*Wheeler* v. *Gregg, supra,* 90 Cal.App.2d 348, 360.) ■ However, the municipal code requires that a city council resolution which reverses or modifies a determination of the board of zoning adjustments must ". . . contain a finding of fact showing wherein the proposed Conditional Use meets or fails to meet the requirements of Section 12.24. . . ." (LAMC, § 12.28-A9(c).) Further, the recent decision of our Supreme Court in *Broadway, Laguna etc. Assn.* v. *Board of Permit Appeals* (1967) 66 Cal.2d 767, 773 [59 Cal.Rptr. 146, 427 P.2d 810], teaches that we may not rely upon the presumption that an administrative agency made sufficient factual findings to support its action where, as here, an ordinance enjoins the agency to state those findings expressly. (See also *Robison* v. *City of Oakland* (1968) 268 Cal.App.2d 269, 273-274 [74 Cal.Rptr. 17].) Therefore, this court must examine the city council resolution to determine if the reasons given for issuing the conditional use permit are relevant and adequate. (Cf. *Broadway, Laguna etc. Assn.* v. *Board of Permit Appeals, supra,* 66 Cal.2d 767, 773-781; *Hamilton* v. *Board of Supervisors* (1969) 269 Cal.App.2d 64, 67-68 [75 Cal.Rptr. 106].)

The council resolution contains several specific findings,[3] from which the

---

so use it only after obtaining a permit for a "conditional use." This situation, coupled with the general welfare standard governing the issuance of conditional use permits, was more than the court could stand. It invalidated the entire agricultural zone ordinance. (See California Zoning Practice, *supra,* § 7.71, p. 306.) The second case, *Redwood City Co. of Jehovah's Witnesses* v. *City of Menlo Park* (1959) 167 Cal. App.2d 686, 697-698 [335 P.2d 195], cannot be reconciled with the later decision by our Supreme Court in *City & County of San Francisco* v. *Superior Court, supra.*

[3]Some of the findings are set forth in the resolution. The balance are incorporated by reference to portions of a report by a city planning associate, on file in the office of the Los Angeles Chief Zoning Administrator—an acceptable practice. (*Swars* v. *Council of City of Vallejo* (1949) 33 Cal.2d 867, 872 [206 P.2d 355].)

council concluded ". . . that the location of the property for the herein authorized purposes will be desirable to the public convenience and welfare and such will be in harmony with the various elements and objectives of the City's Master Plan. . . ." As noted above this is the standard established by the municipal code. (LAMC, § 12.24-C.1.5.) The question is whether the findings support the conclusion. We think they do. The council found that a religious institution best serves a community when it is located where its patrons are likely to reside. This can be seen as a reason for concluding that the location of the temple in the contemplated residential area is "desirable to the public convenience or welfare." Also supporting the public convenience and welfare criterion is the finding that the frontage facade will be "more attractive in appearance than that which presently exists in the R3 developed surrounding lots." In addition, several of the findings demonstrate that the grant will be "in harmony with the various . . . objectives of the Master Plan," as these are set forth in section 12.02 of the Municipal Code.[4] At least two findings are to the effect that property values in the area will not be jeopardized by the conditional use. The council resolution notes that the board of zoning adjustment refused to grant the permit mainly because it feared the conditional use would create a precedent for more intensive use of property in the area. The council determined that no such danger existed. It found that numerous churches, schools and other conditional uses have been established in residential areas without creating any such precedent. Another finding was that the modest height of the temple— only three stories—would preserve adequate open space for light and air in the neighborhood. Finally, there is a determination that less traffic congestion will be caused by the temple than would be generated by residential uses permitted as a matter of right, since the temple would be in use primarily during weekends and because the parking facilities far exceed those required by ordinance.

---

[4]Section 12.02 reads as follows:

"The purpose of this Article is to consolidate and coordinate all existing zoning regulations and provisions into one comprehensive zoning plan in order to designate, regulate and restrict the location and use of buildings, structures and land, for agriculture, residence, commerce, trade, industry or other purposes; *to regulate and limit the height, number of stories, and size of buildings* and other structures, hereafter erected or altered; to regulate and determine the size of yards and other open spaces and to regulate and limit the density of population; and for said purposes to divide the City into zones of such number, shape and area as may be deemed best suited to carry out these regulations and provide for their enforcement. Further, such regulations are deemed necessary in order to encourage the most appropriate use of land; *to conserve and stabilize the value of property; to provide adequate open spaces for light and air,* and to prevent and fight fire; to prevent undue concentration of population; *to lessen congestion on streets; to facilitate adequate provisions for community utilities and facilities such as* transportation, water, sewerage, *schools,* parks *and other public requirements;* and to promote health, safety, and the general welfare, all in accordance with a comprehensive plan." (Italics added.)

III. Sufficiency of Evidence.

■    Our inquiry at this point is limited, as it was in the trial court (Code Civ. Proc., § 1094.5, subd. (c)) to ascertaining whether there was before the city council any substantial evidence, contradicted or uncontradicted, which supports the findings. We hold that there was. (*Mumaw* v. *City of Glendale* (1969) 270 Cal.App.2d 454, 459 [76 Cal.Rptr. 245]; *Siller* v. *Board of Supervisors* (1962) 58 Cal.2d 479, 481-482 [25 Cal.Rptr. 73, 375 P.2d 41].) By stipulation of the parties, a photostatic copy of the transcript of the tape-recording of the council hearing is a part of the record on appeal. Our perusal of it discloses that the Temple presented to the council an illustrated brochure containing detailed drawings of the planned temple structure, showing the parking facilities and landscaping. From viewing such evidence the council could well conclude, as it in fact did, that the temple would not be aesthetically unsuited to the area, that its use would not increase the traffic congestion problems appreciably, and that the temple's design will preserve adequate open space for light and air. Also supporting the traffic congestion finding is testimony that the temple would be used less frequently than existing apartment dwellings, which are built in the area as a matter of right. In addition, the council viewed photographs of high rise apartment buildings in the immediate vicinity and could contrast with their impressions evidence of the modest height of the proposed Sephardic temple. The comparison apparently led the council to conclude that the religious structure would not endanger the value of the surrounding property.

IV. Notice of City Council Hearing.

The parties have stipulated that the hearing before the council's planning committee was duly noticed. Petitioners claim that separate notice was required for the hearing conducted by the city council itself. ■    We read the relevant ordinance (LAMC, § 12.28-A9(e)) to require no more than notice of the planning committee proceeding. The ordinance provides that: "Before acting on any appeal, or any matter transferred to it because of the failure of the Board to act, the City Council *or its Planning Committee* shall set the matter for hearing, giving the same notice as provided in this section for an appeal to the Board." (Italics added.) As we see it, the ordinance contemplates that interested parties should be informed that a zoning controversy has entered a new stage when it reaches the city council level, so that they may protect their rights. This objective is attained by requiring the first body to conduct a hearing to give notice thereof. Petitioners have advanced no compelling reasons why further notice is necessary. Besides, further notice was given. The parties stipulated that, at the close of the hearing before the planning committee, respondent Edelman "audibly

announced that the City Council would consider the appeal at its regular meeting of January 3, 1968." Also, according to the stipulation, a copy of the city council's agenda for its January 3 meeting was posted by the city clerk on January 2, 1968, on the bulletin board immediately adjacent to the doors of the council chamber. The agenda contains a summary of the planning committee report recommending that the conditional use permit be granted, subject to certain conditions.

V. DISQUALIFICATION OF COUNCILMEN.

Section 12.28-A9(c) of the Municipal Code requires a two-thirds vote of the total membership of the city council in order to reverse the determination of the board of zoning adjustments. Since the council had 15 members on the date of the vote on the conditional use permit, 10 votes were required. Petitioners argue that 3 of the 12 councilmen who voted to grant the permit were not qualified to pass on the matter because, as members of the planning committee, they had heard evidence outside of the council hearing, namely at the committee hearing.[5]   ■   The mere fact that the three councilmen heard evidence at the committee proceeding causes no infirmity in the voting. The cases petitioners cite to support their contrary position are not pertinent. *Caesar's Restaurant* v. *Industrial Acc. Com.* (1959) 175 Cal.App.2d 850, 853-855 [1 Cal.Rptr. 97], and *Young* v. *Industrial Acc. Com.* (1940) 38 Cal.App.2d 250, 257 [100 P.2d 1062], involve situations where an administrative agency based its determination upon evidence which the complaining parties had no opportunity to rebut or challenge. In the first case the lack of opportunity was due to the fact that the evidence was heard by the trier of fact after the hearing was concluded. In the second case no rebuttal or challenge was possible because the evidence consisted of a confidential report submitted to the trier of fact. By contrast, here the "outside evidence" was introduced before a duly constituted committee of the city council at a hearing held pursuant to the required notice. Consequently, there was no lack of opportunity to reply to the evidence. In such a situation the councilmen who were also members of the planning committee were not ineligible to vote. (*Griggs* v. *Board of Trustees* (1964) 61 Cal.2d 93, 97-98 [37 Cal.Rptr. 194, 389 P.2d 722]; *McCullough* v. *Terzian* *(Cal.App.) 80 Cal.Rptr. 283; *Flagstad* v. *City of San Mateo* (1957) 156 Cal.App.2d 138, 141-142 [318 P.2d 825].) To hold otherwise would emasculate the committee system.

---

[5]Petitioners also urge that Councilman Mills' vote for granting the permit was invalid, because he was absent while part of the evidence was presented to the council. We pass over this contention since the validity of the votes of the three other councilmen is determinative of the question of whether the requisite two-thirds was mustered,

*A hearing was granted by the Supreme Court on December 17, 1969. The opinion of that court is reported in 2 Cal.3d 647 [87 Cal.Rptr. 195, 470 P.2d 4].

## VI. ALLEGED VIOLATION OF THE MUNICIPAL CODE.

Petitioners next urge that a conditional use permit which allows church parking facilities in the R3 zone which facilities serve a church located in another zone is contrary to the Los Angeles Municipal Code. We disagree. ▉ The zoning administrator is empowered to approve church usage in the R3 zone. (LAMC, § 12.24-C.1.5(a).) Implicit in such authority is the power to allow R3 property to be used for church parking facilities, especially in view of section 12.21-A.4(e), which requires that "There . . . be at least one automobile parking space for each five seats contained within any . . . church. . . ."

## VII. WAS THE GRANT OF THE CONDITIONAL USE PERMIT A "REZONING?"

▉ We adhere to prior case law in holding that the issuance of a conditional use permit does not constitute a rezoning, and that therefore such action does not require the city council to follow rezoning procedures. (*Essick* v. *City of Los Angeles* (1950) 34 Cal.2d 614, 624 [213 P.2d 492]; *Case* v. *City of Los Angeles* (1963) 218 Cal.App.2d 36, 40 [32 Cal.Rptr. 271]; *Wheeler* v. *Gregg* (1949) 90 Cal.App.2d 348, 363 [203 P.2d 37].)

## VIII. UNCONSTITUTIONAL CLASSIFICATION.

Petitioners' final contention is that because the R3 and R4 zones are "substantially similar" the zoning ordinance permitting church usage as a conditional use in R3 is unreasonable since the same use is allowed as a matter of right in R4. Even if the argument had merit, which we in no way intimate, we fail to see how petitioners are prejudiced. The implication of the claim is that church use should be on the same footing in both zones. Yet, petitioners' entire case is based on the assumption that it is not.

The judgment is affirmed.

Aiso, J., and Reppy, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied April 15, 1970.