[Civ. No. 36491. Second Dist., Div. One. May 21, 1971.]

J. MITCHELTREE et al., Plaintiffs and Respondents, v.
CITY OF LOS ANGELES et al., Defendants and Appellants.

**Counsel**

Roger Arnebergh, City Attorney, James A. Doherty, John Daly and Claude E. Hilker, Assistant City Attorneys, and Jerome Montgomery, Deputy City Attorney, for Defendants and Appellants.

Thorpe, Sullivan, Clinnin & Workman and Vincent W. Thorpe, for Plaintiffs and Respondents.

**Opinion**

**LILLIE, J.**—In June of 1968 defendant city, through its department of airports, filed with defendant planning commission an application for a conditional use permit pursuant to the provisions of section 12.24, Los Angeles Municipal Code, which would authorize the construction of hangars (assertedly 10 stories in height to accommodate jet planes) and other commercial buildings on residentially zoned land adjacent to plaintiffs' homes. After a hearing, defendant commission approved the conditional use, and plaintiffs thereafter exhausted their administrative remedies; they then sought a peremptory writ of mandate commanding defendant commission to set aside its decision in the proceeding. The trial court ordered the writ to issue, and defendants have appealed from the judgment.

The basis of the court's decision was that defendant commission had acted in excess of its jurisdiction and failed to proceed in the manner required by law (Code Civ. Proc., § 1094.5, subd. (b)); more specifically, at the time of the approval of the conditional use there was no approved land use plan for the property involved and, therefore, no adequate legislative standard which the commission could, and did, consider as required by section 12.24-B.1 of the Los Angeles Municipal Code (LAMC).[1] In that regard the court found that "An essential element of the 'various elements and

---

[1]In pertinent part section 12.24-B.1 provides that "The Commission shall have authority to approve the use of a lot in any zone, for any of the following conditional uses, if it finds that the proposed location will be desirable to the public convenience or welfare and will be in harmony with the various elements and objectives of the General Plan. In approving a proposal to acquire land for a governmental enterprise . . . the Commission may simultaneously approve a conditional use. The conditional uses under the jurisdiction of the Commission are: (a) Airports or aircraft landing fields. (b) Cemeteries. (c) Educational institutions. (d) Land reclamation projects through the disposal of rubbish. . . . (e) Libraries, museums, fire or police stations. . . . (f) Natural resources development (except the drilling or producing of oil, gas, or other hydrocarbon substances . . .). (g) Public utilities and public service uses or structures. (h) Research and development centers for experimental or scientific investigation of materials, methods or products. . . ."

objectives of the Master Plan' . . . is a community or other land use plan element setting forth proposed land uses." (No. 5.) It also made the following findings (Nos. 8, 9): "As there was, at the time of the approval of this conditional use no adopted land use plan, for the property involved, there existed no adequate legislative standard to guide the actions of the City Planning Commission, when acting in its administrative capacity." And, "By virtue of the absence of an approved land use plan for the property subject to this conditional use application, Respondent Commission failed to proceed in the manner required by law, i.e., Respondent Commission at the time of its decision, did not have and consider sufficient standards as required by Los Angeles Municipal Code § 12.24-B.1 and by the Constitutions of the State of California and the United States."[2]

■ Preliminarily, we dispose of respondents' first contention that since the foregoing findings (Nos. 8, 9) were "proposed" by defendants and adopted by the court, they now have no standing to assign error thereto. Cited is *Smith* v. *Royal Mfg. Co.,* 185 Cal.App.2d 315 [8 Cal.Rptr. 417], which holds that a party cannot challenge a finding of fact which he himself proposed; in such circumstances the party must abide by the consequences of his own act and may not seek a reversal of his own error, committed or invited. Accordingly, the doctrine of invited error was there applied despite appellants' argument (referred to in the opinion) that to do so penalizes a party unjustly if given strict application. In the instant case the two instructions were not "proposed" by the defendants in the fashion found in *Smith.* Rather, it appears that the trial court was aware of the necessity of "spelling out" the basis of its decision; that thereafter defendants submitted as "counterfindings" the two findings hereinabove quoted "without waiving the objection that in some respects they are not supported by the evidence"; that in due course they were incorporated with other findings (and conclusions of law) signed by the court and constituting, in final form, the exact grounds upon which the judgment was based. Further corroborative of the conclusion that defendants did not invite the error asserted on appeal is this signed notation (limited in scope) at the bottom of the last page of the several findings and conclusions: "APPROVED AS TO FORM: Jerome Montgomery, Deputy City Attorney." The procedure here followed is not novel but almost commonplace in litigation demanding considerable exactitude of language involving complex problems. Certainly it cannot be properly urged that defendants, having thus assisted the court in "spelling out" the reasons for its decisions, should be foreclosed from asserting that such reasons were erroneously formulated.

[2]While finding the absence of any land use plan, the court nevertheless found that various other elements of the Master Plan had been adopted, specifically, a Fire Protection Plan, a Highways and Freeways Plan and a Public Libraries Plan (No. 7).

Further on the subject of findings, we also preliminarily point out that except for the narrow issue raised by this appeal, the trial court found against plaintiffs on the several other contentions alleged in their pleadings and litigated below. Thus, there were findings that the petitioning property owners received reasonable notice, as required by law, of the hearing thereafter held by defendant commission; that except for its failure to follow any established standards, defendant commission accorded plaintiffs a fair hearing; that the administrative record (received in evidence) contains substantial evidence that the proposed location will be desirable to the public convenience or welfare; that except for the lack of any adequate standards referred to in findings Nos. 8 and 9, *supra,* the standards established by section 12.24-B.1 for conditional use are not unconstitutionally vague, uncertain or arbitrary; that except as found in Nos. 8 and 9, defendant commission's findings are adequate.

■ At the threshold, both sides point out that the permit was for a conditional use, not a variance. "A conditional use may be permitted if it is shown that its use is essential or desirable to the public convenience or welfare and at the same time that it will not impair the integrity and character of the zoned district." (*Tustin Heights Assn.* v. *Bd. of Supervisors,* 170 Cal.App.2d 619, 626 [339 P.2d 914].) ■ In other words, say respondents, a conditional use should be compatible with the zoned district; accordingly, they argue, there is no compatibility between a 10-story Boeing hangar and a single-family neighborhood the inherent beauty of which is not challenged. While other areas of the city had comprehensive land use plans, absent a land use element in the Master Plan (referred to in LAMC as "General Plan") governing the particular area here involved, it assertedly follows (and the court so found) that the commission acted in excess of its authority. Inherent in such claims and determination is a reliance upon the settled proposition that a Legislature cannot validly delegate to an administrative agency unbridled authority and, to avoid such result, the delegating statute necessarily must establish an ascertainable standard to guide the administrative body. In the present case the court rendered its judgment in December of 1969; two months later (February of 1970) another division of this court filed its opinion in *Stoddard* v. *Edelman,* 4 Cal.App.3d 544 [84 Cal.Rptr. 443], and the Supreme Court thereafter denied a hearing. ■ Since it likewise involved (almost contemporaneously)[3] the same ordinance and, therefore, the same issues here raised, *Stoddard* must be deemed dispositive of the instant appeal. (Though discussed in appellants' brief, significantly respondents make no mention thereof in their reply thereto.)

---

[3]The action was apparently instituted in early 1968 since final action by the city council was taken in January of that year.

The conditional use permit in *Stoddard* was for the construction and use of a religious synagogue in West Los Angeles. Petitioners, like plaintiffs here, were property owners near the site proposed for the planned structure. Unsuccessful at all administrative levels, they sought mandamus to secure a rescission of the zoning ordinance eventually adopted by the city council. According to the opinion, it was contended on appeal (among other things) that the LAMC standards governing the issuance of conditional permits are so vague as to constitute an unconstitutional delegation of legislative authority. The court noted that "standards for issuing conditional use permits which, under the ordinances of California cities, vary from general to specific, have almost uniformly been judicially approved. [Citation.] The standard set by the Los Angeles Municipal Code is a 'general welfare standard.' [Citation.] The code provides that the zoning administrator may issue a conditional use permit '. . . if he finds that a proposed location will be desirable to the public convenience or welfare and will be in harmony with the various elements and objectives of the Master Plan.' [Citation.] At least two courts have squarely held that this ordinance is not too vague to be valid. [Citations.] The Supreme Court sustained an even broader standard in a case involving San Francisco's building permit ordinance. [Citation.] Against this background it is clear that petitioners' argument must fail." (*Supra,* pp. 548-549) ■ Unlike our case (save for the narrow exception already noted), in *Stoddard* it was also contended that the findings of the council, as contained in its resolution, were inadequate to support the issuance of the permit. In addition to several specific findings, the reviewing court noted, the council concluded " '. . . that the location of the property for the herein authorized purposes will be desirable to the public convenience and welfare and such will be in harmony with the various elements and objectives of the City's Master Plan. . . .' As noted above this is the standard established by the municipal code. [Citation.]" (P. 550.) In our case, it appears from certain allegations in the petition for the writ, a precisely similar finding was made, including the recital that the proposed use "will be in harmony with the various elements and objectives of the Master Plan." ■ Had there been any discussion of *Stoddard* by respondents, its distinguishability presumably would have been urged for the reason that here the land use element of the Master Plan was non-existent. A sufficient answer to such claim, however, is found in *Ayres* v. *City Council of Los Angeles,* 34 Cal.2d 31, 41 [207 P.2d 1, 11 A.L.R.2d 503].[4]

---

[4]"Nor does the fact that the master plans are incomplete, or that the specific details are not shown thereon, affect the result. It was in evidence that the city had been working toward the formulation of a complete and entire master plan, although all the elements or parts thereof were not as yet in the final stage of completion. The contention that the requirements for a master plan or some over-all plan must be

Still more recently (February of 1971), in *Van Sicklen* v. *Browne,* 15 Cal.App.3d 122 [92 Cal.Rptr. 786], reference was approvingly made to Stoddard v. *Edelman* in reaching the conclusion that "the criteria for determining an application for a conditional use permit couched in a general statement of standards . . . are constitutionally adequate." (P. 127.) (A petition for hearing by the Supreme Court was thereafter denied without a dissenting vote.) The *Van Sicklen* case is of further significance here because the court there observed that *Redwood City Co. of Jehovah's Witnesses* v. *City of Menlo Park,* 167 Cal.App.2d 686 [335 P.2d 195], relied on by plaintiff Van Sicklen, could not be reconciled with a later decision by the Supreme Court in *City & County of S. F.* v. *Superior Court,* 53 Cal.2d 236 [1 Cal.Rptr. 158, 347 P.2d 294]. Thus, respondents in the present case also rely on *Jehovah's Witnesses,* quoting the court's statement that "an ordinance is invalid where it leaves its interpretation, administration or enforcement to the ungoverned discretion of the administrative agency." (P. 698.)

By way of recapitulation, therefore, respondents do not contend that the ordinance is unconstitutional; rather, they challenge the attempt by the planning commission to act pursuant thereto before the Master Plan in particulars here applicable has been adopted. Further stating respondents' position, once such plan has been adopted with provisions specifically governing the subject matter here, a definite standard will be established pursuant to which the planning commission can properly act. In light of the principles stated in the decisions above discussed, it clearly appears that no such additional steps were necessary, the "general welfare standard" being a sufficient guideline to enable the commission to act constitutionally.

Since the Commission did not abuse its discretion nor exceed the jurisdiction with which it was vested, there is no substantial evidence supporting the trial court's judgment to be contrary.

The judgment is reversed.

Wood, P. J., and Thompson, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied August 18, 1971. Peters, J., was of the opinion that the petition should be granted.

approved and adopted before authority vests in relation to the conditions here imposed is without merit since in any event the charter contemplates that portions thereof may be adopted." (*Ayers* v. *City Council of Los Angeles, supra,* at p. 41.) As shown above, at the time of trial the Master Plan in our case was incomplete—only certain elements or parts thereof (fire protection and others) had been adopted. Too, it is provided in section 96½ of the charter of appellant city that ". . . Upon adoption by the City Planning Commission of said master plan *or any part thereof* . . ." appropriate action can thereafter be taken by the city council.