[Civ. No. 46595. First Dist., Div. Four. Apr. 30, 1981.]

CARL GROCH et al., Plaintiffs and Respondents, v.
CITY OF BERKELEY et al., Defendants and Appellants.

COUNSEL

Theodore R. Lakey, Acting City Attorney, and Richard E. Winnie for Defendants and Appellants.

Richard A. Goodman and Janet M. Tremlett for Plaintiffs and Respondents.

Ronald A. Zumbrun and Thomas E. Hookano as Amici Curiae on behalf of Plaintiffs and Respondents.

OPINION

POCHÉ, J.—This is an appeal from a judgment declaring portions of the City of Berkeley's zoning (ord. No. 3018-NS) and neighborhood preservation ordinances (ord. No. 4641-NS) unconstitutional. We reverse.

## STATEMENT OF FACTS

In April 1973 Berkeley voters approved an initiative establishing the Neighborhood Preservation Ordinance (hereinafter NPO) which was designed to deal with an emergency situation arising from development trends in the City of Berkeley. (NPO, § 2.) It established interim regulations for construction or demolition of residential units and called for revisions in the Berkeley Master Plan to establish a "new planning process" to preserve and enhance the city's neighborhoods.

Under section 4(a) of NPO a use permit must be obtained from the board of adjustments prior to the construction of any new residential unit except "legal conversions and/or the addition of a single legal unit

to an existing structure." (NPO, § 4(a).) A permit request is subject to a review by the board. Similar permit requirements are set forth in section 5 in connection with the demolition of a residential unit.[1]

In 1977, the Berkeley City Council, pursuant to the mandate of the NPO, adopted a new master plan.[2] One year later, the council amended the Berkeley Zoning Ordinance so that the interim permit requirements for residential construction became a permanent feature of the Berkeley zoning scheme.[3]

Under this zoning code, as amended, use permits are required for the construction of most types of residential structures.[4] The board of adjustments is authorized to issue a use permit upon a finding that: "[T]he establishment, maintenance, or operation of the use or building applied for will not, under the circumstances of the particular case existing at the time at which the application is made, be detrimental to the health, safety, peace, morals, comfort and general welfare of persons residing or working in the neighborhood of such proposed use or be detrimental or injurious to property and improvements in the neighborhood or to the general welfare of the City." (Berkeley Zoning Ord., § 20.2.)

---

[1] A demolition permit may only be issued after the board finds that: "the demolition would not be materially detrimental to the housing needs and public interest of the affected neighborhood and the City of Berkeley." (NPO, § 5(b)(1).)

[2] June 28, 1977, Resolution No. 48,835-NS.

[3] See ordinance No. 5044-NS. Although the amendments to the zoning ordinance resulted in the NPO interim construction permit requirements being superseded, the changes did not affect the interim demolition permit requirements. Thus, those provisions of the NPO remained in effect.

[4] The NPO and the revised zoning ordinance require an application for a use permit be made to the board of adjustments for construction of the following structures in the following zoning districts:

(1) One family dwellings in single family residential district ("R-1 District");

(2) One family dwellings in limited two family residential districts ("R-1A District");

(3) One family dwellings, two family dwellings, and dwelling groups containing no more than two (2) dwelling units in a restricted two family residential district ("R-2 District");

(4) One family dwellings, two family dwellings, and dwelling groups containing no more than four (4) dwelling units in restricted multiple family residential districts ("R-2A District");

(5) One family dwellings, two family dwellings, multiple dwellings in multiple family residential districts ("R-3 and R-4 District") and high density residential districts ("R-5 District").

Subsequent to the 1978 revisions, respondents, a group of Berkeley architects and property owners, brought this taxpayer suit alleging: (1) that the permit requirements of both the NPO and the zoning ordinance resulted in an unlawful delegation of legislative authority to the board of adjustments, and (2) that the standards set forth in both ordinances were so vague as to render the permit requirements constitutionally defective. Respondents sought both invalidation of the permit requirements and an injunction permanently restraining Berkeley officials from denying demolition or construction permit applications.[5] The trial court granted the requested relief.

### USE PERMITS FOR CONSTRUCTION

■ In determining zoning policy municipalities are accorded wide judicial deference. (*Miller* v. *Board of Public Works* (1925) 195 Cal. 477, 490 [234 P. 381], app. dism. (1927) 273 U.S. 781 [71 L.Ed. 889, 47 S.Ct. 460]; *Town of Los Altos Hills* v. *Adobe Creek Properties, Inc.* (1973) 32 Cal.App.3d 488, 508-509 [108 Cal.Rptr. 271].) If the need for a particular regulation is a matter upon which reasonable minds can differ judicial intervention is precluded. (*Clemons* v. *City of Los Angeles* (1950) 36 Cal.2d 95, 98-99 [222 P.2d 439].)

■ A legislative body such as a city council may properly delegate powers to an administrative body such as the board of adjustments if (1) the legislative body retains control over the power to make fundamental policy decisions, and (2) the procedure established for the exercise of delegated power adequately safeguards those affected. (*Kuglar* v. *Yocum* (1968) 69 Cal.2d 371, 376-377 [71 Cal.Rptr. 687, 445 P.2d 303].)

■ Under the ordinance here reviewed the city council's control over determination of zoning policy is not diminished. Before enactment of these laws it was the only body which could change the zoning ordi-

---

[5]Specifically, the trial court held the following portions of the two ordinances unlawful: NPO section 4(b)(2), NPO section 5(b)(1), the last paragraph of NPO section 4(b), and section 20.2 of the Berkeley Zoning Ordinance. In the judgment, the trial judge failed to state his exact grounds for the finding of unconstitutionality. Therefore, we look to the superior court's memorandum of decision to assist us in reviewing his decision. (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, §§ 230, 231, pp. 4220-4221.) His memorandum merely states that the findings are based upon "all reasons urged by Plaintiffs." We therefore adopt the contentions framed by the parties in their briefs as the issues on appeal.

nances, revise the master plan or enact legislation pertaining to zoning. It remains so.

By contrast, the board of adjustments must grant or deny permit applications within guidelines set forth by the city council in the master plan and in the purpose clause of the zoning ordinance. In short, the board of adjustments has no power to set policy; it merely applies established policy to a particular set of facts. "Once the legislative body has determined the issue of policy . . . the subsequent filling in of the facts in application and execution of the policy does not constitute legislative delegation." (*Kuglar* v. *Yocum, supra*, 69 Cal.2d at p. 377.)

In evaluating whether the procedure established for the exercise of delegated power adequately safeguards those affected—the second *Kuglar* criterion—we note that all traditional bases are covered. All permit applications are entitled to a full public hearing complete with notice to all affected parties. (NPO, §§ 4(b), 5(b), 7; zoning ord., §§ 20, 20.4, 20.6-20.9.) Further, by express provision any affected party may appeal the board of adjustments' action to the city council (zoning ord., §§ 20.4, 20.5). And, of course, the city council's actions are subject to judicial review. Additionally, any action taken by the board of adjustments must be accompanied by clear and specific findings which explain and support the board's determination. (*Topanga Assn. for a Scenic Community* v. *County of Los Angeles* (1974) 11 Cal.3d 506, 514-515 [113 Cal.Rptr. 836, 522 P.2d 12].)

Notwithstanding this well-established background, respondents maintain the "general welfare standard" allows the board of adjustments to exercise an unlawful degree of control over residential construction in Berkeley. Identical standards have been consistently upheld against charges that they are unconstitutionally vague or that they confer unbridled discretion on administrative bodies. (See e.g., *Tustin Heights Assn.* v. *Bd. of Supervisors* (1959) 170 Cal.App.2d 619 [339 P.2d 914]; *Case* v. *City of Los Angeles* (1963) 218 Cal.App.2d 36, 42 [32 Cal.Rptr. 271].) Only two California cases have invalidated the use of "general welfare standards" in connection with permit reviews. (See, *People* v. *Perez* (1963) 214 Cal.App.2d Supp. 881 [29 Cal.Rptr. 781]; *Redwood City Co. of Jehovah's Witnesses* v. *City of Menlo Park* (1959) 167 Cal.App.2d 686 [335 P.2d 195].) The former is inapposite, the latter of no precedential value.

*Perez* addressed the validity of a Fremont zoning ordinance which, in addition to dividing the city into 17 separate zoning districts, also specified the permitted uses for each. Permits were not required for uses which were designated in the ordinance as either "permitted" or "accessory" but were required for uses classified as "conditional." The Fremont Planning Commission was given the power to issue the permits and review permit applications under "general welfare standard."

The *Perez* court struck down the Fremont ordinance on two grounds. First, it concluded the ordinance was not internally consistent. For example, it found some of the accessory uses listed for a zone were to be in no way subordinate or incidental to that zone's "principal permitted use." More importantly, the court determined some of the conditional uses listed for specific zones were so distinctly different from the zone's permitted uses that the ordinance failed to state a coherent and internally consistent planning policy which the commission could apply.[6]

The second ground of invalidation was that the operation of the Fremont zoning scheme effectively resulted in an unlawful delegation of legislative power from the city council to the planning commission. Because many of the conditional uses were unrelated to the permitted uses in a zoning district, the ordinance in effect permitted the planning commission to disregard zoning designations and to allow development as it wished through the conditional use permit process. Thus, the fact the commission was guided by a general welfare standard was not itself fatal in *Perez*. Rather, the court objected to the use of such a broad standard in a context which allowed the commission to approve uses wholly inconsistent with the defined purposes of the zoning district. (See, *Stoddard v. Edelman* (1970) 4 Cal.App.3d 544, 548, fn. 2 [84 Cal.Rptr. 443].)

Unlike *Perez*, the Berkeley ordinance before us does not involve conditional uses which are inconsistent with the uses permitted as a matter of right. Second, the Berkeley Board of Adjustments does not have the

---

[6]An example of the confusion generated by the ordinance challenged in *Perez* is the following. Land in the R-G zone was zoned for the following "principal permitted uses": "Agricultural, except for the raising of animals or fowl for commercial purposes, or the sale of any products at retail on the premises." Yet in spite of the agricultural character of the zoning, farmhouses and other necessary farm structures were not permitted as a matter of right. Moreover, the conditional uses permitted in the zone included such distinctly nonagricultural developments as social halls, nursing homes, automobile trailer parks, multifamily dwellings, and motels. (*Perez, supra,* 214 Cal.App.2d Supp. at pp. 883-885.)

power to effectively transform the character of a zoning district as the Fremont Planning Commission did in *Perez*.[7]

*Redwood City Co. of Jehovah's Witnesses* v. *City of Menlo Park, supra,* 167 Cal.App.2d 868, also has little precedential value. Its result cannot be reconciled with the subsequent California Supreme Court decision in *City and County of San Francisco* v. *Superior Court* (1959) 53 Cal.2d 236, 250 [1 Cal.Rptr. 158, 347 P.2d 294]. (See *CEEED* v. *California Coastal Zone Conservation Commission* (1974) 43 .Cal. App.3d 306, 326, fn. 15 [118 Cal.Rptr. 315]; *Van Sicklen* v. *Browne* (1971) 15 Cal.App.3d 122, 127 [92 Cal.Rptr. 786]; *Mitcheltree* v. *City of Los Angeles* (1971) 17 Cal.App.3d 791, 797 [95 Cal.Rptr. 76]; *Stoddard* v. *Edelman, supra,* 4 Cal.App.3d at p. 548.) In sum, there is no barrier to the use of a "general welfare standard" in the Berkeley zoning context.

## DEMOLITION PERMITS

Under NPO section 5(b)(1) the board of adjustments may issue a demolition permit only if it finds: "the demolition would not be materially detrimental to the housing needs and public interest of the affected neighborhood and the City of Berkeley."

Our holding above with reference to the standards set out in *Kuglar* is equally applicable here. The delegation is valid.

■ Further, this section is not vague. The purpose clause in section 5 sets out the preservation of older housing stock as a clear and explicit consideration which the board must weigh in granting or denying a permit.[8] The result is the board of adjustments is not permitted to exercise unbridled discretion on demolition requests, but rather must follow the guidelines established by the ordinance and the council. Under these circumstances the delegation is lawful.

---

[7]We are not alone in limiting *Perez* to its own facts. (See, *CEEED* v. *California Coastal Zone Conservation Commission, supra,* 43 Cal.App.3d 306, 326, fn. 15; *Orinda Homeowners Committee* v. *Board of Supervisors* (1970) 11 Cal.App.3d 768, 776 [90 Cal.Rptr. 88, 43 A.L.R.3d 880]; *Stoddard* v. *Edelman, supra,* 4 Cal.App.3d at p. 548.)

[8]The introductory statement to section 5 reads in part: "In order to protect the stock of older housing during the period between the enactment of the 'Neighborhood Preservation Ordinance' and the final acceptance by the Berkeley City Council of the revised Master Plan and Zoning Ordinance, no residential demolition permits shall be issued, except in conformity with the following requirements. . . ."

The judgment is reversed.

Caldecott, P. J., and Colvin, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.